UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF COLUMBIA

---

SECURITIES AND EXCHANGE COMMISSION
100 F Street, N.E.
Washington, DC 20549,

               Applicant,

v.

EDWARD F. PANOS,
ALLISON PANOS,
PANOS INTERNATIONAL INVESTMENT FUND,
PANOS INDUSTRIES LLC,
EFP ADVISORS, LLC,
BROADWAY FAMILY GROUP, LLC,
EPHEMERAL DEVELOPMENT, LLC,
WINTHEPICKS.COM, LLC, and
YUMMY COOKIES, INC.,
2543 Aspen Springs Drive
Park City, UT  84060,

               Respondent.

Misc. No. 16-

---

**MEMORANDUM OF LAW
IN SUPPORT OF APPLICATION FOR AN ORDER TO SHOW CAUSE
AND AN ORDER REQUIRING OBEDIENCE TO SEC ADMINISTRATIVE SUBPOENAS**

 

Suzanne J. Romajas
Virginia Rosado-Desilets (DC Bar No. 482928)
Sonia G. Torrico
SECURITIES AND EXCHANGE COMMISSION
100 F Street, N.E.
Washington, DC 20549-5971
Direct:  202-551-4473
Email:  RomajasS@sec.gov

Attorneys for Applicant

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

STATEMENT OF FACTS ........................................................................................................ 2

ARGUMENT .............................................................................................................................. 7

I.  Jurisdiction And Venue Are Proper ................................................................................ 7

II. The Subpoenas Satisfy All Requirements For Enforcement ........................................... 8

    A.  The SEC's Inquiry Has A Legitimate Purpose ........................................................ 8

    B.  All Administrative Requirements Have Been Satisfied ........................................ 10

    C.  The Subpoenas Seeks Information Relevant To The Investigation ....................... 11

III. Panos' Purported Lack of Funds Should Not Provide a Basis for Respondents
    To Withhold Documents Responsive to the Staff's Subpoenas……………. . . . . . . . .  12

CONCLUSION ........................................................................................................................ 13

## TABLE OF AUTHORITIES

### CASES

*Penfield Co. v. SEC*, 330 U.S. 585 (1947) ............................................................................... 7

*SEC v. Arthur Young & Co.*, 584 F.2d 1018 (D.C. Cir. 1978), *cert. denied*, 439 U.S. 1071 (1979) ............................................................................................................................ 7, 9, 11

*SEC v. Blinder, Robinson & Co., Inc.*, 681 F. Supp. 1 (D.D.C. 1987) ................................ 7, 9, 11

*SEC v. Brigadoon Scotch Distributing Co.*, 480 F.2d 1047 (2d Cir. 1973), *cert. denied*, 415 U.S. 915 (1974) .................................................................................................................. 8

*SEC v. Dresser Industries, Inc.*, 453 F. Supp. 573 (D.D.C. 1978), *aff'd*, 628 F.2d 1368 (D.D.C. 1980) ........................................................................................................................... 8

*SEC v. Dresser Industries, Inc.*, 628 F.2d 1368 (D.C. Cir.), *cert. denied*, 449 U.S. 993 (1980) ........................................................................................................................................ 8

*SEC v. Gulf Resources, Inc.*, Fed. Sec. L. Rep. (CCH) ¶ 99,174 (D.D.C. Apr. 15, 1983) .............. 7

*SEC v. Jerry T. O'Brien, Inc.*, 467 U.S. 735 (1984) ..................................................................... 8

*United States v. Morton Salt Co.*, 338 U.S. 632 (1950) ............................................................. 9

*United States v. Powell*, 379 U.S. 48 (1964) .............................................................................. 8

### STATUTES

15 U.S.C. § 77s(c) ...................................................................................................................... 10

15 U.S.C. § 77v(b) ....................................................................................................................... 7

15 U.S.C. § 78u(a) ....................................................................................................................... 8

15 U.S.C. § 78u(a)(1) .................................................................................................................. 9

15 U.S.C. § 78u(b) ..................................................................................................................... 10

15 U.S.C. § 78u(c) ....................................................................................................................... 7

17 C.F.R. 201.14(b)(3) ............................................................................................................... 10

17 C.F.R. §§ 203.8 ..................................................................................................................... 10

iii

**MISCELLANEOUS**

K. Davis, *Administrative Law Treatise* § 3.06, at 188-89 (1958) .................................................11

The Securities and Exchange Commission ("Commission" or "SEC") submits this memorandum in support of its Application, pursuant to Section 21(c) of the Securities Exchange Act of 1934, to compel respondents Edward F. Panos ("Panos"), Allison Panos, Panos International Investment Fund, Panos Industries LLC, EFP Advisors, LLC, Broadway Family Group, LLC, Ephemeral Development, LLC, Winthepicks.com, LLC and Yummy Cookies, Inc. (collectively, "Respondents") to comply with administrative subpoenas issued by the SEC on April 4 and April 6, 2016 (the "Subpoenas"), seeking the production of documents and testimony needed to investigate possible violations by Respondents and others of the federal securities laws.

## PRELIMINARY STATEMENT

This matter arises out of Respondents' refusal to comply with administrative subpoenas issued by the SEC on April 4 and 6, 2016, in connection with its formal investigation into potential violations of the federal securities laws related to multiple microcap issuers, including E-Waste Systems, Inc. ("EWSI"). The Subpoenas required Respondents to produce documents which show, among other things, Respondents' communications with issuers, entities and individuals of interest in the investigation, Respondents' trading activity and movement of funds, as well as documents reflecting telephone numbers and service providers, calendars, and contacts. Declaration of Virginia M. Rosado Desilets In Support of Application For An Order To Show Cause And For An Order Requiring Obedience To Subpoenas, dated August 24, 2016 ("Rosado Decl.") Exhs. 3-16. The Subpoenas also required Respondents, and/or their custodians of records, to appear for testimony at the SEC's headquarters in Washington, DC, on specified dates in April and May 2016. *Id.*

To date, despite the passage of over four months, Respondents have made no attempt to comply with the Subpoenas. Not a single document has been produced to the SEC by Respondents, nor has any Respondent appeared for testimony.

1

In May 2016, counsel for Respondents asserted that Panos does not have sufficient funds to respond to the Subpoenas. Rosado Decl. ¶ Y and Exh. 21. The staff of the SEC's Division of Enforcement (the "Staff") attempted to mitigate those concerns even though, as discussed in detail below, there are reasons to doubt Panos's claims of indigence. The Staff offered various accommodations that would make Respondents' compliance with the Subpoenas less burdensome, including, among other things, the Staff offered to interview Panos by telephone to determine whether the requests could be narrowed, agreed to accept at the outset a disk of documents offered by Respondents' counsel even though counsel was unaware of the exact content of the disk, and offered to image Respondents' computers at no cost to Respondents. Rosado Decl. ¶ FF and Exhs. 22-23. Respondents have not responded to any of these offers and their counsel has not communicated with the Staff since May 2016, despite the Staff's efforts to reach out to him. Rosado Decl. ¶ GG

For the reasons presented in this memorandum, Respondents have no valid reason for their non-compliance with the SEC's Subpoenas, which should be enforced.

## STATEMENT OF FACTS

On May 15, 2015, the Staff initiated a nonpublic investigation into possible violations of the federal securities laws relating to suspicious activity concerning the shares of EWSI. Rosado Decl. Exh. 1.[1] Rosado Decl. Exh. 1. Early in its investigation, the Staff discovered that Panos and various entities he controls with his wife Allison Panos have ties to several different microcap companies, including EWSI, that appear to have been the subject of manipulative trading

---

[1] The Formal Order Directing Private Investigation and Designating Officers to Take Testimony, issued on May 15, 2015, specifically refers to potential violations of Sections 5(a), 5(c), 17(a) and 17(b) of the Securities Act and Sections 9(a), 10(b), 13(a), 13(b)(2), 13(b)(5) and 13(d) of the Exchange Act and Rules 10b-5, 12b-20, 13a-1, 13a-13, 13a-14, 13a-15, and 13b-2 promulgated thereunder. Rosado Decl. Exh. 1 at 4.

2

and/or fraudulent promotional campaigns.  Rosado Decl. ¶¶ E-H.  On April 1, 2016, the SEC issued an Amended Order Directing Private Investigation and Examination and Designating Officers to Take Testimony in the same investigation.  Rosado Decl. Exh. 2.

Although the Staff's investigation is ongoing, the Staff has reason to believe that Panos and his controlled entities – *i.e.*  Panos International Investment Fund, Panos Industries LLC, EFP Advisors, LLC, Broadway Family Group, LLC, Ephemeral Development, LLC, Winthepicks.com, LLC, and Yummy Cookies, Inc. ("Controlled Panos Entities") -- were and may continue to be participants in a manipulative scheme or schemes involving the securities of numerous microcap and penny stock companies.  Specifically, the Staff has identified a pattern of activity by Panos across several different microcap or penny stock companies.  Panos caused private non-operating companies to be incorporated and placed a figurehead whom he controlled as the sole officer and director of each company.  He then provided the figurehead officer with funds to seek out phony "investors" willing to permit their names to be used for a sham private offering.  After registering the sham offering with the SEC through a Form S-1 registration statement, thereby taking the companies public, Panos gained control of virtually all of the shares of each company through disguised accounts.[2]  He then arranged to sell interests in each now-public but still non-operating company to a private entity.  Through a reverse-merger transaction, name change, and/or other change in control, each private entity became publicly-traded.  Rosado Decl.¶¶ E-H.

The Staff has reason to believe that Panos continued to work with each company after the reverse merger to orchestrate promotional campaigns to increase trading volume and share

---

[2]   In each of these schemes, it appears that Panos held shares and conducted his trading in names other than his own.  For example, he used Panos International Investment Fund, among other entities he controls, to trade shares in EWSI.  The Staff has reason to believe that Panos transacted business this way in order to deliberately evade SEC beneficial ownership reporting requirements by keeping his holdings in each name below the reporting threshold.  Rosado Decl.¶ H.

3

price of each company. He then sold his shares into the artificially-inflated market for a significant profit. The Staff believes Panos made several million dollars repeating this scheme across multiple issuers, including EWSI. Rosado Decl.¶ G.

On April 4, 2016, the SEC served subpoenas on Panos, and six of the Controlled Panos Entities, requiring them to produce documents on or before April 18, 2016. Rosado Decl. Exhs. 3-13. The subpoenas required testimony from a custodian of records of the Controlled Panos Entities on April 26, 2016. Rosado Decl. Exhs. 4-13. The subpoena to Panos required that he testify on May 24, 2016. Rosado Decl. Exhs. 3.

On April 6, 2016, the SEC served subpoenas on Allison Panos and a seventh Controlled Panos Entity, Yummy Cookies, Inc., requiring them to produce documents on or before April 20, 2016 and to give testimony on April 26, 2016 (Yummy Cookies) or May 24, 2016 (Allison Panos). Rosado Decl. Exhs. 14-16.

On April 21, 2016, following the return of subpoenas to six of the Controlled Panos Entities[3] (with a note that the recipient "did not want" or "refused delivery"), counsel for Respondents agreed to accept service of all remaining Subpoenas. The Staff immediately served the subpoenas again, this time on counsel. Rosado Decl. Exhs. 17-20.

The Subpoenas require Respondents to produce documents relating to, among other things, certain issuers, entities and individuals of interest in the investigation. The issuers, identified in Appendix A of the Subpoenas, are those at which the Staff believes Panos orchestrated his scheme or are affiliated with a person with whom the Staff believes Panos attempted to orchestrate other schemes. The entities, identified in Appendix B of the Subpoenas, are principally brokers, transfer agents, stock promoters and others involved with the issuers. The individuals, identified in Appendix C of the Subpoenas, are current or former employees of

---

[3]   The subpoena to Winthepicks.com was not returned. Rosado Decl. ¶¶ M, T-U.

the issuers or persons whom the Staff believes to be current or former associates of Panos. Rosado Decl. ¶¶ Q to S.

The Subpoenas principally seek documents that would reveal Panos's (and the Controlled Panos Entities') relationship to the issuers in the investigation and his role in the schemes that are under investigation, including the extent to which Panos controlled or controls the issuers involved in the investigation, any trading by Panos in those issuers, any payments between and among Panos, the Controlled Panos Entities, and the issuers, entities and individuals identified in the Appendices. *See, e.g.,* Rosado Decl. Exh. 3 at Section C, ¶¶ 1-2, 5-17, 19-20, 22-23, 38-39. Additionally, the Subpoenas seek documents concerning Respondents' home and business addresses; email addresses, social networking accounts, and blogs; their telephone numbers and service providers; their calendars, address books and contact lists; as well as their bank and brokerage accounts. *See, e.g.,* Rosado Decl. Exh. 3 at Section C, ¶¶ 24-26, 29-30, 32-37.

The documents sought by the Subpoenas are necessary for the Staff to investigate the involvement of Panos, his wife, and the Controlled Panos Entities in the various issuers involved in the SEC's investigation. To date, Respondents have failed to produce a single document in response to the Subpoenas. Rosado Decl. ¶ CC.

The Subpoenas also require Respondents to appear for testimony at the SEC's headquarters on specified dates. Rosado Decl. Exhs. 3-16. Respondents failed to appear on the dates noticed. Rosado Decl. ¶ DD. The date for Panos's testimony was postponed by the SEC to permit counsel more time to respond to the document portions of the subpoena, but that has not occurred. The dates for the remaining Respondents were never postponed or cancelled; Respondents simply failed to appear. Rosado Decl. ¶ FF-GG.

In May 2016, counsel for Respondents asserted that Panos did not have sufficient funds to respond to the SEC's requests. Rosado Decl. Exh. 21. Although the Staff is aware of

5

information suggesting Panos has a history of hiding assets,[4] the Staff has offered several options to minimize any expense associated with responding to the Subpoenas.  Rosado Decl. ¶ FF and Exhs. 22-23.  For example, the Staff offered to accept a written Business Records Declaration from the Controlled Panos Entities in lieu of testimony from the custodian of records of each of the entities.  Rosado Decl. ¶ FF and Exh. 25.  The Staff offered to send a forensic specialist to Panos's home to image his computers and handheld devices at no cost to him.  Rosado Decl. ¶ FF and Exh. 23.  The Staff offered to provide Panos with instructions for extracting responsive, non-privileged emails from gmail and other service providers, to avoid the cost of a forensic vendor.  *Id.*  The Staff offered to send Panos a UPS label so that he could place any hard-copy documents or electronic media into a box or envelope and ship them to the SEC free of charge; and to copy or scan the documents, as well as apply bates-labels to them, at no cost to Panos.  *Id.*  Counsel has not responded to these offers.  Rosado Decl. ¶ GG.

In May 2016, counsel offered to provide the SEC with a disk, already in his possession, containing copies of documents he had previously provided to a different SEC office in a now-closed investigation.  Rosado Decl. ¶ Z.  Although counsel could not tell the Staff to which office he produced the disk, in which prior investigation, what the disk contained, or which issuers it might relate to, the Staff agreed to accept that disk as an initial production.  *Id*.  The Staff also agreed to conduct a telephonic interview of Panos following review of the

---

[4]    As part of its investigation, the Staff has also reviewed documents filed in the United States Bankruptcy Court in the Southern District of Ohio (Cases 2:13-bk-58441 and 2:14-ap-02035) in connection with Panos's Chapter 7 bankruptcy proceeding, which is ongoing.  In those filings, a creditor provided evidence that Panos had hidden or liquidated some assets to avoid paying a large court judgment against him, and had placed those assets and others in his wife's name and in the name of an entity purportedly controlled by her (Respondent Broadway Family Group, LLC) to avoid providing notice of those assets to the court.  The creditor, through counsel, also provided evidence that Panos misrepresented his ownership interest and involvement with several entities in an attempt to hide assets, and transferred funds from these entities to offshore bank accounts and to his wife for payment of personal expenses.  Rosado Decl. ¶ II.

documents contained on that disk, to determine whether it could further narrow the subpoena requests. Rosado Decl. Exh. 22. As of the date of this filing, counsel has not even provided that disk, despite follow-up requests for it. Rosado Decl. Exhs. 22-23. Nor has Panos made himself available for an interview or even scheduled a date for an interview. Rosado Decl. ¶¶ AA-CC.

## ARGUMENT

**I.     Jurisdiction And Venue Are Proper**

When a subpoenaed party refuses to comply with an SEC subpoena, jurisdiction is vested in the United States District Courts to enforce such subpoena upon application by the SEC. 15 U.S.C. § 77v(b); 15 U.S.C. § 78u(c). Accordingly, this Court has jurisdiction over the subject matter of this application and may issue an order directing Respondents to comply with the Subpoenas.

Venue is proper before this Court because an SEC subpoena enforcement action may be brought in any United States District Court "within the jurisdiction of which such investigation or proceeding is carried on." 15 U.S.C. §78u(c). The investigation at issue here is being conducted out of the SEC's headquarters in Washington, DC, and the Subpoenas were issued and returnable in Washington, DC. Therefore, venue for the enforcement of the Subpoenas appropriately lies in this District.

**II.    The Subpoenas Satisfy All Requirements For Enforcement**

To enforce an administrative subpoena, a court must be satisified that (i) the inquiry has a legitimate purpose, (ii) the subpoena was issued in accordance with the required administrative procedures and (iii) the information sought is reasonably relevant to some subject of the inquiry. *United States v. Powell*, 379 U.S. 48, 57-58 (1964).[5] Once these threshold criteria are

---

[5]     *See also Penfield Co. v. SEC*, 330 U.S. 585 (1947); *SEC v. Arthur Young & Co.*, 584 F.2d 1018, 1024 (D.C. Cir. 1978), *cert. denied*, 439 U.S. 1071 (1979); *SEC v. Blinder, Robinson & Co., Inc.*, 681 F. Supp. 1, 4 (D.D.C. 1987); *SEC v. Gulf Res., Inc.*, Fed. Sec. L. Rep. (CCH) ¶ 99,174

7

met, the burden shifts to the opposing party to establish that the subpoena is unreasonable. *SEC v. Brigadoon Scotch Distrib. Co.*, 480 F.2d 1047, 1056 (2d Cir. 1973), *cert. denied,* 415 U.S. 915 (1974). The burden of showing unreasonableness "is not easily met." *Id.* None of these elements are in controversy in this application as Respondents have not – nor could they – contest the Subpoenas on grounds of SEC authority.

### A.     The SEC's Inquiry Has A Legitimate Purpose

Congress created the SEC as an independent regulatory agency having the primary responsibility to enforce the federal securities laws and thus primary responsibility to protect the integrity of the nation's capital markets. Toward that end, in Section 21(a) of the Exchange Act, Congress gave the SEC broad authority to conduct such investigations as it deems necessary in order to determine whether any person "has violated, is violating or is about to violate" any provisions of the federal securities laws. *See* 15 U.S.C. § 78u(a); *see also SEC v. Jerry T. O'Brien, Inc.*, 467 U.S. 735, 741 (1984); *SEC v. Dresser Indus., Inc.*, 628 F.2d 1368, 1376-77 (D.C. Cir.), *cert. denied*, 449 U.S. 993 (1980). Further, Congress gave the SEC authority to investigate "any facts, conditions, practices or matters" that, <u>in its discretion</u>, the SEC deems necessary or proper to aid in the enforcement of the federal securities laws. 15 U.S.C. § 78u(a)(1).

Courts routinely have recognized that, given this broad statutory authority, "there is virtually no possibility" that the SEC, in commencing an investigation or issuing an administrative subpoena, is acting *ultra vires*.[6] Indeed, as the United States Supreme Court explained in *United*

---

(D.D.C. Apr. 15, 1983); *SEC v. Dresser Indus. Inc.*, 453 F. Supp. 573, 557 (D.D.C. 1978), *aff'd*, 628 F.2d 1368 (D.D.C. 1980).

[6]     *See, e.g., Dresser Industries*, 628 F.2d at 1380 (investigation based on Staff conclusion that company "may have engaged in conduct" in violation of the federal securities laws "falls squarely within the [SEC]'s explicit investigatory authority"); *Blinder Robinson*, 681 F. Supp. at 4 (acknowledging that "[a]s the SEC is charged with overseeing the securities industry and preventing fraud in the trading of stocks and bonds, it is well within the scope of its authority to request information necessary to dispel or confirm suspicions of which they have substantive evidence").

8

*States v. Morton Salt Co.*, 338 U.S. 632 (1950), an agency can investigate upon mere suspicion that the law has been violated, without a showing of probable cause. The Court explained that:

> [An agency] has a power of inquisition, if one chooses to call it that, which is not derived from the judicial function. It is more analogous to the Grand Jury, which does not depend on a case or controversy for power to get evidence but can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not. When investigative and accusatory duties are delegated by statute to an administrative body, it, too may take steps to inform itself as to whether there is probable violation of the law.

*Id.* at 642-43. The SEC thus is acting within the scope of its Congressionally-granted authority even where its investigation is based on nothing more than official curiosity. *See, e.g., Arthur Young*, 584 F.2d at 1023-24 & n.45 (quoting *Morton Salt*) (recognizing that "even if one were to regard a request for information . . . as caused by nothing more than official curiosity, nevertheless law-enforcing agencies have a legitimate right to satisfy themselves that corporate behavior is consistent with the law and public interest").

Here, on May 15, 2015, pursuant to its authority under Sections 19(c) and 20(a) of the Securities Act and Sections 21(a) and (b) of the Exchange Act, the SEC issued a Formal Order that authorizes the Division of Enforcement to investigate potential violations of the federal securities laws from 2008 to the present relating to EWSI. Rosado Decl. Exh. 1. That authority was expanded to include investigation and examination of additional issuers on April 1, 2016.[7] Rosado Decl. Exh. 2.

---

[7] The Formal Order was amended to permit examination of two issuers seeking to register shares with the SEC, and one issuer still in its offering period. Although the investigation also revealed similar conduct by the same individuals and entities in several other issuers, the SEC did not amend the Formal Order to list all of the issuers of which it is aware to date. Updating the Formal Order each time that the Investigation reveals an additional issuer, violation, or potentially responsible party is neither practical nor required. While EWSI remains the focus of the investigation, the Staff is also investigating similar misconduct by the same individuals and entities in other issuers. Rosado Decl. ¶¶ I-L.

9

The Staff, consistent with the Formal Order, seeks documents and information relating to the Respondent's role and involvement in potential securities violations relating to EWSI, and other public issuers with which the Staff has reason to believe Respondents were involved. The SEC's investigation – and the Subpoenas issued in connection therewith – unquestionably are within the scope of the Formal Order and the SEC's Congressionally-authorized law enforcement powers.

B.     **All Administrative Requirements Have Been Satisfied**

Section 19(c) of the Securities Act, 15 U.S.C. § 77s(c), and Section 21(b) of the Exchange Act, 15 U.S.C. § 78u(b), provide that the Commission may, in the course of conducting investigations, designate officers and empower them to subpoena witnesses. 15 U.S.C. § 78u(b). Pursuant to Rule 8 of the Commission's Rules Relating to Investigations, investigative subpoenas may be served by several methods, including by any method conveying actual notice. 17 C.F.R. §§ 203.8 and 201.14(b)(3). Here, Division of Enforcement staff attorneys, designated in the Formal Order as officers of the Commission, issued the Subpoenas to Respondents. Rosado Decl. Exh. 2 at 6. The subpoenas to Edward and Allison Panos were delivered by UPS to the Panos's home address. Panos acknowledged that he had received the subpoena addressed to him. Rosado Decl. ¶ 6. The subpoenas to the Controlled Panos Entities were sent via UPS to the registered agent for each entity, as well as to the principal place of business of the entity, or to the home address of an officer or director of the entity. Rosado Decl. Exhs. 4-15. Copies of the subpoenas for all of the entities except Winthepicks.com, LLC (which was sent to the Panos's home address and was not returned to the SEC) were also subsequently delivered by email to counsel for Respondents, who stated that he had authority to accept service for those subpoenas. Rosado Decl. Exh. 17-20. Respondents' receipt of the Subpoenas is not in controversy.

### C. The Subpoenas Seek Information Relevant To The Investigation

As the D.C. Circuit recognized, the SEC's subpoena power is "co-extensive" with its investigative power and, thus, a conclusion that a subpoena is too indefinite or seeks irrelevant information is essentially "foredoomed by [the Court's] holding that the scope of the investigation itself is adequately bounded." *Arthur Young*, 584 F.2d at 1025. That is:

> The breadth of an investigation is for the investigators to determine. The breadth of a subpoena or of a search made in records may be excessive, but the test is relevance to the specific purpose, and the purpose is determined by the investigators.

*Id.* at 1031 (quoting K. Davis, *Administrative Law Treatise* § 3.06, at 188-89 (1958); *see also Blinder Robinson*, 681 F. Supp. at 4 (prima facie evidence that the evidence sought has potential importance in terms of the investigative objectives is sufficient to validate the scope of the request). The threshold for demonstrating relevance, thus, is low.

The information sought by the SEC is relevant to the SEC's investigation. The Subpoenas, in furtherance of the above-stated investigatory objective (Point II.A, *supra*), focus on four categories of documents:

- Documents demonstrating the extent of the involvement of the Respondents with the Designated Issuers being investigated by the SEC;

- Documents demonstrating trading by the Respondents in the Designated Issuers;

- Documents to enable the SEC to locate and identify communications from Respondents with representatives of the Designated Issuers; and

- Documents to enable the SEC to identify any compensation paid or received by Respondents in connection with their involvement with the Designated Issuers.

Rosado Decl. Exhs. 2-16.  Such documents are all clearly relevant to the SEC's assessment of whether Respondents have violated any of the federal securities laws.  Moreover, absent the production of the subpoenaed documents, the Investigation would be seriously impaired.

Respondents have never asserted, in numerous communications with the SEC, that the information sought was not relevant to the investigation.  Accordingly, and, for all of the foregoing reasons, the Court should find that the SEC has satisfied its burden on this Application.

III. **Panos's Purported Lack of Funds Should Not Provide A Basis For Respondents To Withhold Documents Responsive To The Subpoenas**

Respondents' sole response to the Subpoenas has been to assert that Panos does not have sufficient funds to comply with the Subpoenas.  Rosado Decl. Exh. 21.  As mentioned, although the Staff has reason to doubt the accuracy of this claim, it nonetheless made several offers to mitigate the cost of compliance.  Respondents have ignored all of the SEC's efforts to lessen their burden of compliance.  Rosado Decl. ¶¶ FF-GG.  It is apparent that this is simply a tactic to avoid compliance.  Accordingly, this Court should reject Respondents' argument and require Respondents to produce the requested documents and appear for testimony.  If costs were a genuine concern, Respondents would have taken advantage of the offers the SEC has made to ease this burden.

## **CONCLUSION**

For the reasons stated above and in the SEC's Application, the SEC requests that the Court grant the Application and enter: (i) an Order, in the form submitted, requiring Respondents to show cause why they should not be ordered to produce documents and appear for testimony pursuant to the Subpoenas properly issued by the SEC and served upon them; and (ii) an Order, in the form submitted, requiring obedience to the Subpoenas.

Dated: August 24, 2016                          Respectfully submitted,

                                            ***/s/ Suzanne J. Romajas***
                                            Suzanne J. Romajas
                                            Virginia Rosado Desilets (DC Bar No. 482928)
                                            Sonia G. Torrico
                                            Securities and Exchange Commission
                                            100 F Street, N.E.
                                            Washington, DC 20549-5971
                                            Direct:  202-551-4473
                                            Email:  RomajasS@sec.gov

                                            Attorneys for Applicant